DEPARTMENT OF REVENUE, FINANCE, AND ADMINISTRATION CABINET, et al., Appellants

v.

Wanda Faye WADE, et al., Appellees.

No. 2011–SC–000095–DG.

Supreme Court of Kentucky.

Sept. 20, 2012.

Travis Alan Powell, Frankfort, KY, Counsel for Appellants.

Paul F. Fauri, Frankfort, KY, Counsel for Appellee, Wanda Faye Wade.

Mark A. Sipek, Boyce Andrew Crocker, Kentucky Personnel Board, Frankfort, KY, Counsel for Appellee, Personnel Board, Commonwealth of Kentucky.

Opinion of the Court by Justice SCOTT.

This case requires us to determine whether a state employee, after receiving notice of her employer's intent to dismiss her, waives her right to a pre-termination hearing by repeatedly engaging in conduct that delays the hearing. The Kentucky Personnel Board concluded that Appellee, Wanda Faye Wade, did not waive her right to a pre-termination hearing, and that her dismissal therefore violated her right to due process. The Franklin Circuit Court and Kentucky Court of Appeals agreed with this conclusion and affirmed. We granted discretionary review and now reverse.

## I. BACKGROUND[1]

Wade worked for the Kentucky Department of Revenue's Finance and Adminis-tration Cabinet ("the Cabinet") for thirty-seven years. By letter dated February 14, 2005, the Cabinet notified Wade of its intent to terminate her employment for lack of good behavior and unsatisfactory work performance. A subsequent nine-page letter detailed the reasons for her dismissal, including: (1) routine misreporting of her arrival time; (2) failure to abide by office rules; (3) continued inability to respect supervisory staff; (4) careless work habits which had a negative effect on her work performance and productivity; and (5) inability to perform the essential functions of her job in a satisfactory manner. Specific examples of each were provided in the letter.

Attached to the February 14 letter was a form advising Wade that she had five days to request a pre-termination hearing. Through her first attorney, David Emerson, Wade timely requested the hearing which was scheduled for February 23, 2005.

However, on February 16, Wade informed the Cabinet that she had been injured and could not return to work. Soon thereafter, Emerson requested that the pre-termination hearing be postponed, and the Cabinet agreed to reschedule the hearing for February 28, 2005.

Despite Wade's alleged inability to work due to injury, she walked to the Office of the Secretary of the Finance and Administration Cabinet on February 18. She demanded to see the Deputy Secretary in an effort to dissuade the Cabinet from dismissing her. However, she was instead

1. Although there were multiple proceedings at the administrative level and in the courts below (including two recommendations from a Hearing Officer, two final orders from the Personnel Board, three separate appeals from those orders to the Franklin Circuit Court, and a consolidated appeal to the intermediate appellate court), and multiple issues presented therein (including the efficacy of the Cabinet's attempt to reinstate Wade to mitigate damages pending the legal proceedings, and the amount of back pay Wade is entitled to), we will address only those facts and proceedings relevant to our disposition in this opinion.

escorted to the office of the Cabinet's counsel where she called Emerson who advised her to leave the premises.

On February 25—three days before the rescheduled hearing—Emerson again asked to postpone the hearing. This time, he provided a doctor's note asking that Wade be excused from work or a hearing between the dates of February 16 and March 9, 2005. Emerson informed the Cabinet's counsel that Wade's doctor advised her to be "off her legs" and remain at home until she could see an orthopedic surgeon. The Cabinet's counsel once again agreed to postpone the hearing on the condition that Emerson contact her no later than March 9, 2005 to reschedule the hearing. However, Emerson never called.

Instead, at the end of the workday on March 9, 2005, the Cabinet's counsel called Emerson to discuss rescheduling the hearing. Emerson informed counsel that he had faxed her some documents to review. These documents were (1) a Family and Medical Leave Act (FMLA) "Certification of Health Care Provider" signed by Wade's orthopedic surgeon, and (2) an application for ninety-days of medical leave under the FMLA, signed by Wade and approved that same day by the Cabinet's payroll branch manager.[2] Emerson informed the Cabinet's counsel that Wade's physician did not want her to attend a hearing until after June 9, 2005—the date on which her FMLA leave would end. Once Emerson indicated that he was not going to reschedule the hearing, the Cabinet's counsel told him: "You leave me no choice but to proceed with termination." Emerson replied: "Do what you have to do."

The next day, March 10, 2005, the Cabinet issued Wade a notice of termination.

In the notice, the Cabinet informed Wade that it considered her to have waived her right to a pre-termination hearing.

After hiring a new attorney, Wade timely appealed to the Personnel Board. Relevant to this appeal, the Hearing Officer entered the following finding of fact:

> Wade did not intend to waive the pre-termination hearing, but attempted to delay it for as long as she could by using the Family and Medical Leave Act as a shield from the impending pre-termination hearing.

The Hearing Officer then concluded that "Wade, although she temporized and delayed the process, did not waive her constitutional right to a pre-termination hearing." Accordingly, it determined that her right to due process was violated. The Personnel Board accepted the Hearing Officer's findings and conclusions, and adopted his recommendations. In a subsequent Order, the Personnel Board awarded Wade back pay.

On consecutive appeals, the Franklin Circuit Court and the Court of Appeals affirmed. We subsequently granted discretionary review to address the question of whether a state employee may be deemed to have waived a pre-termination hearing, without subjectively intending to do so, by deliberately and repeatedly engaging in conduct that delays the hearing.

Additional facts will be provided where helpful to our analysis.

## II. ANALYSIS

■■■ A classified employee of the Commonwealth's executive branch has a property interest in her continued employment. *See Faust v. Commonwealth,* 142

---

**2.** The payroll branch manager later testified that had she known the Cabinet intended to dismiss Wade, she would not have approved the FMLA leave. The Cabinet withdrew approval the next day in conjunction with her dismissal.

S.W.3d 89, 94 (Ky.2004); KRS 18A.095.[3] The Commonwealth may not deprive her of her property interest by terminating her employment without due process of law. U.S. Const. amend XIV, § 1 ("[N]or shall any state deprive any person of life, liberty, or property, without due process of law"); *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). "The essential requirements of due process ... are notice and an opportunity to respond." *Id.* at 546, 105 S.Ct. 1487. The " 'root requirement' of the Due Process Clause [is] 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.' " *Id.* at 542, 105 S.Ct. 1487 (*quoting Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)). However, in certain circumstances, "a post-deprivation hearing will satisfy due process requirements." *Id.* at n. 7 (*citing Ewing v. Mytinger & Casselberry, Inc.,* 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950); *N. Am. Cold Storage Co. v. Chicago,* 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908)).·

■ The United States Supreme Court has recognized that "[d]ue process does not, of course, require that the defendant in every civil case actually have a hearing on the merits." *Boddie,* 401 U.S. at 378, 91 S.Ct. 780. Rather, the due process inquiry focuses only on the *opportunity* to be heard, *Loudermill,* 470 U.S. at 542, 105 S.Ct. 1487; that right, however, may be waived. *See D.H. Overmyer Co. Inc., of*

*Ohio v. Frick Co.,* 405 U.S. 174, 185, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972) ("The due process rights to notice and hearing prior to a civil judgment are subject to waiver."). "A State, can, for example, enter a default judgment against a defendant who, after adequate notice, fails to make a timely appearance...." *Boddie,* 401 U.S. at 378, 91 S.Ct. 780 (*citing Windsor v. McVeigh,* 93 U.S. 274, 278, 23 L.Ed. 914 (1876)).

### A. The Waiver Standard

To begin with, the law appears to be somewhat unsettled with respect to the proper waiver standard applicable to a property right case. In *Overmyer,* the U.S. Supreme Court addressed the issue of whether a party can contractually waive, in advance, the due process rights to notice and a hearing. 405 U.S. at 184–85, 92 S.Ct. 775. The Court assumed, without deciding, that the criminal waiver standard—which requires a waiver to be knowingly, voluntarily, and intelligently made, *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)—also applied to property right cases. *Id.* at 186, 92 S.Ct. 775. The Court has not subsequently announced a different waiver standard for property right cases, so we will assume that the criminal waiver standard applies here.

■ As recited in *Overmyer,* the standard applicable to this case requires the waiver to be "voluntary, knowing, and intelligently made," and that it must be "an intentional relinquishment or abandonment

---

3. KRS 18A.095 provides, in pertinent part:

(1) A classified employee with status shall not be dismissed, demoted, suspended, or otherwise penalized except for cause.

(2) Prior to dismissal, a classified employee with status shall be notified in writing of the intent to dismiss him. The notice shall also state:

(a) The specific reasons for dismissal including:

1. The statutory or regulatory violation;
2. The specific action or activity on which the intent to dismiss is based;
3. The date, time, and place of such action or activity; and
4. The name of the parties involved; [and]

(b) That the employee has the right to appear personally, or with counsel if he has retained counsel, to reply to the head of the cabinet or agency or his designee[.]

of a known right or privilege." *Id.* (citations and internal quotation marks omitted). Until now, this Court has not had the occasion to consider the circumstances under which an individual may be deemed to have waived her opportunity to be heard prior to termination of her employment. And although we cannot find a case from any jurisdiction that addresses the specific issue presented by this case, we look to our sister courts for guidance.

In *Birdwell v. Hazelwood School District,* the Eighth Circuit found a valid waiver of the right to a pre-termination hearing. 491 F.2d 490, 495 (8th Cir.1974). In that case, the appellant, a public school teacher, was suspended after confronting R.O.T.C. personnel in front of students. *Id.* at 492. The district superintendent invited him to participate in a pre-termination hearing but, on advice of counsel, the appellant did not attend. *Id.* at 493. At the hearing, the school board unanimously voted to terminate his employment. *Id.* The Eighth Circuit concluded that the appellant had been provided constitutionally sufficient notice and an opportunity to be heard. *Id.* at 495. However, he "deliberately chose not to avail himself of it. . . ." *Id.*

Similarly, in *Cliff v. Board of School Commissioners of the City of Indianapolis,* a school board offered the appellant, a teacher, a pre-termination hearing which she accepted. 42 F.3d 403, 413 (7th Cir. 1994). The school board therefore postponed consideration of the appellant's termination pending the hearing. *Id.* Thereafter, the appellant filed a grievance and withdrew her request for a pre-termination hearing, asking the school board to further defer its decision until after the grievance process had run its course. *Id.* The school board refused and the appellant failed to renew her request for a hearing. *Id.* The school board subsequently declined to renew the appellant's contract. *Id.* The Seventh Circuit concluded that the appellant waived her right to a pre-termination hearing, holding that "the Due Process Clause does not require that a pre-termination hearing be conducted in every case. Instead, the right to such a hearing generally is waived when an employer offers a pre-termination hearing and the employee fails to accept." *Id.* at 413–14.

Although *Birdwell* and *Cliff* did not address the specific issue before this Court, they do provide valuable guidance. In both cases, the courts found that the appellants' behavior satisfied the "intentional relinquishment or abandonment of a known right" standard because the appellants were provided the *opportunity* to be heard, but did not avail themselves of the opportunity. *Overmyer,* 405 U.S. at 186, 92 S.Ct. 775. Thus, an individual may satisfy the "intentional waiver" standard without subjectively intending to waive his or her right to a pre-termination hearing.

Next, in *United States v. Sutcliffe,* a criminal case,[4] the Ninth Circuit affirmed the trial court's judgment that the appellant had implicitly waived his right to counsel under the knowing and voluntary standard. 505 F.3d 944, 955–56 (9th Cir. 2007). In that case, the district court granted six motions to withdraw by six different court-appointed defense attorneys. *Id.* at 954–55. Upon granting the sixth attorney's motion to withdraw, the trial court found that the appellant had implicitly waived his right to counsel. *Id.* at 955. The Ninth Circuit noted that the appellant had been warned "more than once that he would be deemed to have

---

4. Because we are utilizing the knowing, voluntary, and intelligent waiver standard applicable to criminal cases, we find it appropriate to look to criminal waiver cases for guidance.

waived his right to counsel if he persisted in sabotaging his relationships with his attorneys." *Id.* at 955–56. Accordingly, the Ninth Circuit affirmed the trial court's finding of a knowing and intelligent waiver of his right to counsel. *Id.* at 956. *See also United States v. Moore*, 706 F.2d 538, 540 (5th Cir.1983) ("[A] persistent, unreasonable demand for dismissal of counsel and appointment of new counsel ... is the functional equivalent of a knowing and voluntary waiver of counsel."); *North Dakota v. Holbach*, 735 N.W.2d 862, 865–66 (N.D. 2007) (finding a knowing and intelligent waiver of right to counsel where the defendant's "behavior [was] indicative of using pretrial motion practice and requesting different lawyers to obstruct the legal process").

In perhaps the most helpful case to our analysis, the Supreme Court of Georgia affirmed a felony murder conviction over the appellant's claim that he was denied his right to counsel. *Jones v. Georgia*, 272 Ga. 884, 536 S.E.2d 511, 513–14 (2000). The trial court had appointed a public defender, but the appellant quickly became dissatisfied with her representation. *Jones v. Walker*, 540 F.3d 1277, 1279 (11th Cir.2008).[5] Less than two weeks before trial was to commence, the appellant requested a hearing to address the question of representation. *Id.* at 1280. The appellant engaged in a lengthy dialogue with the judge about his dissatisfaction, but the judge would not appoint him a new attorney. *Id.* The appellant stated at least five times that he was *not* waiving his right to counsel, but that he would not proceed with appointed counsel. *Id.* at 1280–81. Appointed counsel was discharged and the trial was postponed for two months. *Id.* at 1281.

Less than two weeks before the second trial date, the appellant had a change of heart and asked that original counsel be re-appointed. *Id.* The court granted the request and again rescheduled the trial for three months later. *Id.* Once again, less than two weeks before trial the appellant complained of appointed counsel's representation. *Id.* He re-asserted that he was not waiving his right to counsel but that he would not continue with appointed counsel, and appointed counsel was once again dismissed. *Id.* at 1282. The appellant then requested another continuance which the trial court denied. *Id.* at 1283. He conducted his own defense, was convicted on all charges, and was sentenced to life imprisonment. *Id.*

Before the Supreme Court of Georgia, the appellant denied "that he engaged in any dilatory tactics," and argued that the trial court failed to establish "that he apprehended the nature of the charges, the range of allowable punishments, potential defenses and mitigating circumstances, and any possible lesser included offenses...." 536 S.E.2d at 513. The court rejected his arguments and, despite his repeated assertion that he was not waiving his right to counsel, it held that he had satisfied the waiver standard. *Id.* It concluded that "[t]he trial court was authorized to find that [the appellant] was attempting to use the discharge and [appointment] of other counsel as a dilatory tactic, which was 'the functional equivalent of a knowing and voluntary waiver of appointed counsel.'" *Id.* (internal quotation marks omitted) (*quoting Bryant v. Georgia*, 268 Ga. 616, 491 S.E.2d 320 (1997)).

■ As previously mentioned, this Court has failed to identify a case from

**5.** After exhausting his appeals in Georgia state courts, the appellant filed a petition for writ of *habeas corpus* in federal court. The Eleventh Circuit's recitation of the facts in this case is substantially more detailed than that of the Georgia Supreme Court. For that reason, we will cite to the Eleventh Circuit's opinion when discussing the facts of the case.

any jurisdiction that addresses the issue currently before this court. However, drawing upon the wisdom of our sister courts in *Birdwell, Cliff, Sutcliffe,* and *Jones,* we synthesize the rule for when an individual may be *deemed to have waived* a right to a pre-termination hearing without subjectively intending to do so:

> An individual is deemed to have waived her right to a pre-termination hearing when she is provided sufficient notice and an opportunity to be heard, but: (1) does not attend the hearing; (2) fails to accept the offered hearing; (3) obstructs the legal process by engaging in behavior that she has been warned will constitute a knowing waiver; or (4) obstructs the legal process by engaging in behavior in a deliberate effort to delay the proceedings.[6]

With this in mind, we turn to our appellate standard of review.

## B. Application

██ The Cabinet argues that Wade effectively waived her right to a pre-termination hearing by repeatedly delaying the hearing. We review the decision of an administrative agency under a two-prong analysis: we first must determine whether the agency's findings of facts are supported by substantial evidence of probative value; we then must determine whether "the administrative agency has applied the correct rule of law to the facts so found." *S. Bell Tel. & Tel. Co. v. Ky. Unemployment Ins. Comm'n,* 437 S.W.2d 775, 778 (Ky.1969).

### 1. Findings of Fact

██ The facts of this case have been accurately set forth in Section I *supra.* With regard thereto, the Personnel Board adopted the following Findings of Fact from the Hearing Officer's November 4, 2005 Order:

1. The relevant facts of the case ... are not in dispute. There is disagreement between [the Cabinet's counsel] and David Emerson as to whom had the responsibility to initiate a call on March 9, 2005, to reschedule the pre-termination hearing. A finding of fact is not important to a resolution of the issue of waiver and of the appeal.

2. [The Cabinet's counsel], in good faith, concluded that Wade had waived a pre-termination hearing and advised the Cabinet that she should be immediately terminated.

3. Wade did not intend to waive the pre-termination hearing, but attempted to delay it for as long as she could by using the [FMLA] as a shield from the impending pre-termination hearing.

4. The March 9, 2005 conversation between [the Cabinet's counsel] and David Emerson was fraught with ambiguity and misunderstanding. Dunlap's statement, "You leave me no choice but to proceed with termination," could be interpreted as a threat to skip the pre-termination hearing and proceed to termination or merely a statement that she intended to restart the termination process by unilaterally scheduling a pre-termination hearing. Emerson's statement, "Do what you have to do," is a purely defensive posture inviting the Cabinet to make the next move in the legal chess match. There was no knowing and intelligent waiver of Wade's constitutional right to a pre-termination hearing.

We find Facts (1), (2), and (3) to be supported by substantial evidence of probative

---

6. We note that these are not the only circumstances in which an individual may be deemed to have waived her right to a pre-termination hearing. However, after a thorough review of analogous case law, these seem to be the ones that occur most often.

value and therefore accept them as binding.[7] *Southern Bell*, 437 S.W.2d at 778. We do not, however, believe that Fact (4) is supported by substantial evidence of probative value.[8] Specifically, we do not believe that the Cabinet counsel's statement, under the totality of the circumstances, is susceptible to the interpretation that "she intended to restart the termination process by unilaterally scheduling a pre-termination hearing."

The statement in question was made during the March 9, 2005 phone call that was originally intended for the purpose of rescheduling the hearing. When Emerson indicated that he was not going to reschedule the hearing, the Cabinet's counsel stated: "You leave me no choice but to proceed with termination." Given the circumstances under which it was said—i.e.,

after Emerson indicated that he was *not* going to agree to reschedule the hearing—interpreting the Cabinet's counsel's statement as meaning the Cabinet might reschedule the hearing for its own amusement is unreasonable. Without some indication from Emerson or Wade that they planned to participate, the Cabinet had no reason to unilaterally reschedule the hearing as it had already satisfied its obligation to provide Wade an *opportunity* to be heard.

This conversation was not "fraught with ambiguity and misunderstanding." The only reasonable interpretation of the Cabinet's counsel's statement is that the Cabinet intended to skip the pre-termination hearing and immediately effectuate Wade's termination.[9]

---

7. " '[S]ubstantial evidence' means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Owens–Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky.1998) (citations omitted). With respect to Fact (1), the Hearing Officer was presented with competing briefs submitted by each party arguing that it was the other party's responsibility to initiate the call and reschedule the hearing. Both parties' briefs were supported by competent arguments as to why it was the other party's burden to reschedule the hearing. Additionally, because we believe the issue can be resolved without a specific finding as to who bore the responsibility, we agree that a formal finding on the issue is unnecessary. Accordingly, Fact (1) is supported by substantial evidence.

Next, with respect to Fact (2), the evidence presented to the Hearing Officer included several attempts by the Cabinet to schedule and reschedule the hearing; several requests by Wade to postpone the hearing; an indication by the Cabinet's counsel that the Cabinet was going to terminate her in light of her repeated requests to postpone; and Emerson's statement, "Do what you have to do," which can fairly be interpreted by the Cabinet's counsel as a waiver. *See infra* note 9. Accordingly, Fact (2) is supported by substantial evidence.

Finally, with respect to Fact (3), the evidence presented to the Hearing Officer in-

cluded a request to continue the original February 23 hearing due to Wade's health issues; a request to continue the second scheduled hearing of February 28 due to Wade's health issues; and the request for FMLA leave on March 9—the date the doctor's note "expired" and the date on which the parties were supposed to reschedule the hearing. Accordingly, Fact (3) is supported by substantial evidence.

8. *See, e.g., Cepero v. Fabricated Metals Corp.*, 132 S.W.3d 839, 842–43 (Ky.2004) (concluding that ALJ's finding that appellee's work-related injury caused certain medical issues was not supported by substantial evidence); *Moberly v. Thompson*, 404 S.W.2d 277, 279 (Ky.1966) (holding that the Alcoholic Beverage Control Board's finding that granting the appellant a liquor license "would not be in the public interest" was not supported by substantial evidence under the totality of the circumstances).

9. Whether Emerson's statement, "[d]o what you have to do," during the March 9, 2005 telephone conversation with Cabinet counsel constitutes a "knowing, intelligent, and voluntary" waiver of his client's right to a pre-termination hearing is not an issue that we granted discretionary review to consider. Our predecessor Court has held that an attor-

## 2. Application of law to the facts

▮ We begin by noting that the Hearing Officer correctly identified the knowing, intelligent, and voluntary waiver standard as applicable to this case. However, he did not acknowledge the substantial body of case law that holds that an individual may be deemed to have waived a right by virtue of her conduct. *See, e.g., Sutcliffe,* 505 F.3d at 955–56; *Jones,* 536 S.E.2d at 513. For purposes of our *de novo* review of the application of the law to the facts, we find these cases highly relevant to the question presented.

In his November 4, 2005 Order, the Hearing Officer's third Conclusion of Law states:

> The Hearing Officer concludes as a matter of law that Wade, although she temporized and delayed the process, did not waive her constitutional right to a pretermination hearing. In *Barker v. Wingo,* 407 U.S. 514 [92 S.Ct. 2182, 33 L.Ed.2d 101] (1972), the U.S. Supreme Court defined waiver of the right to counsel in a criminal case "as an intentional relinquishment or abandonment of a known right or privilege," and held that "courts should indulge every reasonable presumption against waiver … and they should not presume acquiescence in the loss of fundamental rights."

(Citations omitted). We find this conclusion to be erroneous.

We accepted as conclusive the hearing officer's third Finding of Fact—that is, that "Wade did not intend to waive the pre-termination hearing, but attempted to delay it for as long as she could by using the [FMLA] as a shield from the impending pre-termination hearing." In light of the previously stated rule that an individual may be *deemed to have waived* her right when she intentionally engages in conduct in a deliberate effort to delay the proceedings, *e.g., Jones,* 536 S.E.2d at 513, the third Finding of Fact requires the conclusion that Wade knowingly, intelligently, and voluntarily waived her right to a pre-termination hearing.

Accordingly, we hold that the very fact that Wade applied for FMLA leave in a deliberate attempt to delay the pre-termination hearing, after previously postponing the hearing twice, constitutes a knowing, intelligent, and voluntary waiver of that hearing. Individuals cannot be permitted to obstruct the legal process by hiding behind the FMLA shield. Wade was provided notice of the Cabinet's intent to terminate her employment, and she was given an opportunity to be heard. She risked losing that opportunity by deliberately engaging in conduct designed to delay the hearing as long as possible. We deem this to satisfy the constitutional waiver standard.

In closing, we add that one could reasonably conclude from the record that Wade's likely motive was to delay her termination until she had reached retirement or Social Security eligibility. This would explain why Wade applied for FMLA leave to delay the hearing as long as possible; using her 450 hours of compensatory time and/or the 37.5 hours of sick time she had been donated likely would not have shield-

---

ney is generally authorized "to make agreements and stipulations relative to procedural matters…." *De Long v. Owsley's Ex'x,* 308 Ky. 128, 213 S.W.2d 806, 807 (1948) (citations omitted). "But he is without authority to compromise a case or to surrender a substantial right of a client unless special authority from his client has been granted him to do

so." *Id.* The record is silent as to the scope of Emerson's authority, so we could not resolve this issue even if it were properly before us. Thus, resolution of this case is confined by the record to whether Wade's dilatory conduct can be deemed a knowing, intelligent, and voluntary waiver of her right to a pre-termination hearing.

ed her from the hearing. A subsequent Order from the Hearing Officer on the issue of damages reveals that Wade testified that she was saving her compensatory time for retirement. The Cabinet, however, argued that she "exaggerated her medical condition and manipulated her rights to a pre-termination hearing by claiming rights to FMLA benefits and delaying her pre-termination date until she reached retirement age." For some reason, the Hearing Officer "sustained Wade's objection to presenting any additional evidence to prove her bad faith." While we do not think that additional evidence of Wade's bad faith is crucial to finding that she waived her right to a pre-termination hearing, it certainly would have been relevant to the question of whether she was using her injured status in an attempt to obstruct the legal process.[10]

### III. CONCLUSION

We conclude that Wade was not deprived of her constitutional rights to notice and an opportunity to be heard prior to her dismissal.[11] We therefore reverse the judgment of the Court of Appeals, vacate the order awarding Wade back pay, and remand for further proceedings consistent with this opinion.

All sitting. All concur.

---

10. We also add that Wade took full advantage of her post-deprivation rights, filing her appeal to the Personnel Board twenty days after her termination and appearing at her pre-hearing conference on May 18, 2005—a time during which her FMLA paperwork purported her to be unable to work. It is noteworthy that Wade's medical issues did not prevent her from participating in any proceedings after her termination.

11. Accordingly, the remaining issues regarding (1) the efficacy of the Cabinet's attempt to reinstate Wade to mitigate damages pending the legal proceedings, and (2) the amount of back pay Wade is entitled to are moot.