RENDERED:  NOVEMBER 22, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0593-MR

KENTUCKY DEPARTMENT OF
CRIMINAL JUSTICE TRAINING;
JUSTICE CABINET,
COMMONWEALTH OF KENTUCKY;
KENTUCKY PERSONNEL BOARD;
AND PERSONNEL CABINET,
COMMONWEALTH OF KENTUCKY                    APPELLANTS


                        APPEAL FROM FRANKLIN CIRCUIT COURT
v.                      HONORABLE PHILLIP J. SHEPHERD, JUDGE
                        ACTION NO. 22-CI-00292


RONALD A. GODSEY                                    APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, MCNEILL, AND TAYLOR, JUDGES.

CALDWELL, JUDGE:  Ronald Godsey was placed on investigatory leave by his

employer, the Kentucky Department of Criminal Justice Training ("Justice

Training"), based on misconduct allegations.  Justice Training sent Godsey a letter

informing him that he was being placed on leave ("the Letter").  This appeal asks

us to determine whether the Letter was required to comply with KRS[1] 18A.095(8), and, if so, whether it did. We agree with the Franklin Circuit Court that the Letter was required to comply with the statute, but it did not. Therefore, we affirm.

## FACTS

In November 2018, Justice Training placed Godsey on special leave for investigative purposes via the Letter, which provided in relevant part:

> Pursuant to 101 KAR[2] 2:102, Section 9, you will be placed on special investigative leave with pay for a period not to exceed sixty (60) working days, effective December 3, 2018, pending further investigation of allegations of misconduct, specifically:
>
> Allegations have been received of the following misconduct: observations of harassment of co-workers and staff; discrimination against women, and creating [a] hostile place to co-workers . . . .
>
> In accordance with KRS 18A.095, you may have a right to appeal this action to the Personnel Board within sixty (60) days . . . .

Godsey appealed to the Kentucky Personnel Board ("the Board"), arguing the Letter did not satisfy KRS 18A.095(8), which then provided:

> (8) A classified employee with status who is demoted, suspended, or otherwise penalized shall be notified in writing of:
>
> (a) The demotion, suspension, or other penalization;

---

[1] Kentucky Revised Statutes.

[2] Kentucky Administrative Regulations.

(b) The effective date of the demotion, suspension, or other penalization;

(c) The specific reason for the action including:

1. The statutory or regulatory violation;

2. The specific action or activity on which the demotion, suspension, or other penalization is based;

3. The date, time, and place of the action or activity; and

4. The name of the parties involved; and

(d) That he or she has the right to appeal to the board within sixty (60) days, excluding the day that he or she received notification of the personnel action.[3]

A hearing officer ruled against Godsey. Pursuant to KRS 13B.110(4), Godsey filed exceptions, but the Board affirmed the hearing officer and found that the Letter complied with KRS 18A.095. Specifically, the Board held as follows:

> In applying the provisions of KRS 18A.095(8), it is important to remember that the penalization is placing the employee on leave, not conducting the investigation. As a result, a letter placing an employee on leave must contain information primarily related to the facts that led the Agency to the decision to place the employee on leave, not the subsequent conduct of the investigation . . . . Importantly, complete and detailed information about the underlying allegations is not required . . . . When applying this standard to the letter issued to [Godsey] in this case, it is clear that the letter complies

---

[3] KRS 18A.095(8) was amended in 2023 to, as it pertains to this case, remove references to "other penalization[s]" and to make plain that it applies only to suspensions without pay. However, it is uncontested that the former version of KRS 18A.095(8) applies here.

with both the statutory requirements of KRS 18A.095(8)
as well as the regulatory requirements.

Godsey appealed to the Franklin Circuit Court. *See* KRS 18A.100 and KRS 13B.140. The circuit court ruled in Godsey's favor, holding that:

> the notice letter that was sent by the appointing authority to [Godsey], is deficient on its face for failure to provide any specific facts, times, dates or places of alleged incidents giving rise to the investigation. At a minimum, the notice letter must provide [Godsey] with a meaningful opportunity to challenge the decision.

Justice Training, the Justice and Public Safety Cabinet, the Personnel Cabinet, and the Board (collectively "the Agencies") then filed this appeal.

## STANDARD OF REVIEW

The relevant facts appear to be undisputed. Moreover, despite being mentioned in the parties' briefs, neither the propriety of placing Godsey on investigatory leave nor the ultimate outcome of the investigation are germane to the very narrow issues properly before us. Instead, our limited tasks are to determine whether the Letter had to comply with the applicable version of KRS 18A.095(8) and, if so, whether it did. Consequently, this appeal presents questions of law, or perhaps mixed questions of law applied to facts. Regardless, our review is *de novo*. *See, e.g.*, *Puckett v. Cabinet for Health and Family Services*, 621 S.W.3d 402, 407 (Ky. 2021); *Kentucky Retirement Systems v. Department of Public Advocacy*, 675 S.W.3d 505, 509 (Ky. App. 2023).

-4-

We first address the Agencies' argument that the Letter was not required to comply with KRS 18A.095(8) because Godsey was not "penalized." After all, the notification requirements of KRS 18A.095(8) applied only to a "classified employee with status who is demoted, suspended, or otherwise penalized . . . ." We conclude Godsey was suspended and thus he was penalized.[4]

KRS 18A.005(24), as it existed during the relevant time period here, defined *penalization* in relevant part as a "demotion, dismissal, [or] suspension . . . ." Since Godsey was neither demoted nor dismissed, we focus on whether he was suspended. *Suspension* is not statutorily defined. KRS 446.080(4) requires that we construe the words of all statutes "according to the common and approved usage of language," unless the words "have acquired a peculiar and appropriate meaning in the law . . . ." The parties have not shown that the simple word *suspension* has acquired a peculiar meaning in the law, so we must construe the statutory language according to its plain language.

In pertinent part, the dictionary definition of *suspension* is "a temporary removal (as from office or privileges)[.]" https://www.merriam-webster.com/dictionary/suspension (last visited Oct. 21, 2024). In the law, *suspension* is similarly defined in relevant part as "[t]he temporary deprivation of a

---

[4] In 2023, the General Assembly deleted the definition of *penalization* from KRS 18A.005 and removed the reference to *penalization* from KRS 18A.095(8).

person's powers or privileges, esp. of office or profession . . . ." BLACK'S LAW DICTIONARY (12th ed. 2024). The Letter temporarily removed Godsey from his employment position. The Letter also temporarily deprived Godsey of the powers or privileges of his office or profession. Indeed, the Letter specifically forbade Godsey from even entering any Justice Training facilities without an appointment. Godsey was suspended. Thus, the notification requirements of the applicable version of KRS 18A.095(8) were triggered when Godsey was placed on investigatory leave.[5]

The fact that Godsey was paid while on investigatory leave does not change our conclusion. We have explained that Godsey was suspended. The applicable version of KRS 18A.095(8) did not provide that its detailed notification requirements only applied to persons suspended without pay, nor did the definition of *penalization* in the applicable version of KRS 18A.005(24) refer only to unpaid suspensions. We cannot change the statutory language from "suspended" to "suspended without pay" as "a court may not add language to the written law to achieve a desired result." *Fox v. Grayson*, 317 S.W.3d 1, 8 (Ky. 2010). Godsey was suspended, albeit with pay, and he therefore was penalized.

---

[5] Our penalization analysis differs from that used by the parties, the Board and the circuit court but precedent holds that "[i]f an appellate court is aware of a reason to affirm the lower court's decision, it must do so, even if on different grounds." *Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 496 (Ky. 2014).

Next, the Agencies argue the specificity requirements of KRS 18A.095(8) do not apply because an administrative regulation specifically applicable to investigatory leave does not contain similar notification requirements. Indeed, 101 KAR 2:102, §9(3), which allows an employee to be placed on "special leave with pay for investigative purposes[,]" only generically requires the employee to be provided "the reasons for being placed on leave."

The version of KRS 18A.110(1)(h) in effect from 2016 to 2020 allowed the Personnel Cabinet to promulgate administrative regulations governing "special leaves of absence . . . ." We accept, for purposes of argument, that Godsey's investigatory leave was a special leave of absence, and that the Personnel Cabinet was authorized to enact an administrative regulation governing investigatory leave. But we reject the Agencies' argument that 101 KAR 2:102, §9 somehow superseded the detailed notification requirements in KRS 18A.095(8).

Kentucky precedent has plainly held for over seventy-five years that "no administrative board may add to the requirements of a statute, nor can it eliminate therefrom any requirement contained in the statute." *Robertson v. Schein*, 305 Ky. 528, 534, 204 S.W.2d 954, 957 (1947). In fact, KRS 18A.110(5)(a) required administrative regulations to "comply with the provisions of this chapter" and KRS 18A.110(5)(b) provided that "[a]dministrative regulations promulgated by the secretary shall not expand or restrict rights granted

to, or duties imposed upon, employees and administrative bodies by the provisions of this chapter . . . ." 101 KAR 2:101, §9 improperly restricted the detailed notification rights qualifying employees are guaranteed by KRS 18A.095(8). We consequently reject the Agencies' insistence that 101 KAR 2:102, §9 is, under these facts, an easier-to-satisfy notification provision which trumped the more stringent notification requirements of KRS 18A.095(8). The contrary is true.

We have already held that Godsey was suspended. It is uncontested that he was a classified Executive Branch employee. Therefore, KRS 18A.095(8) was applicable and so Godsey was entitled to receive the detailed notification required by the applicable version of that statute, regardless of 101 KAR 2:102, §9's less onerous, detailed notification requirements.

We now must determine whether the Letter complied with KRS 18A.095(8). It plainly did not, despite the Board's holding to the contrary.

KRS 18A.095(8) required an employee who was "suspended or otherwise penalized" to be notified in writing of "[t]he specific action or activity" upon which the penalization was based, including "[t]he date, time, and place of the action or activity" and "[t]he name of the parties involved . . . ." KRS 18A.095(8)(c)2.-4. The Letter does not include *any* dates, times, places, or names of involved persons. Therefore, we readily agree with the trial court that the Letter "is deficient on its face . . . ."

We reject the Agencies' arguments to the general effect that KRS 18A.095(8) cannot be enforced as it was written because doing so would be unreasonable or lead to absurd results. *See, e.g.*, *Kentucky Unemployment Ins. Co. v. Jones*, 809 S.W.2d 715, 716 (Ky. App. 1991) ("In addition, the courts have a duty to accord statutory language its literal meaning unless to do so would lead to an absurd or a wholly unreasonable result."). We instead again agree with the circuit court's holding that a "notice letter must provide [Godsey] with a meaningful opportunity to challenge the decision." At its core, the point of sending such a detailed document to an employee is to allow him or her to meaningfully contest the misconduct allegations which led to the penalization – *i.e.*, to provide the employee with the protections of due process.

The scant details in the Letter were wholly insufficient to let Godsey meaningfully challenge his suspension. For example, how did the Letter inform Godsey specifically what he allegedly did wrong, or when he allegedly did it? How did the Letter inform him what witnesses he could call to challenge the allegations? How did the Letter even inform him how he could challenge the vague misconduct allegations in his own testimony?

Our Supreme Court has made plain that "[a] classified employee of the Commonwealth's executive branch has a property interest in her continued employment. The Commonwealth may not deprive her of her property interest by

terminating her employment without due process of law." *Department of Revenue, Finance and Admin. Cabinet v. Wade*, 379 S.W.3d 134, 137-38 (Ky. 2012) (citations and footnote omitted). Given the broad language in the version of KRS 18A.095(8) applicable here (which provided notification and appellate rights to *any* penalized employee), a qualifying employee also had a similarly cognizable interest in not being penalized without due process. And the hallmarks of due process are notice and an opportunity to be heard. *Wade*, 379 S.W.3d at 138.

There is not a one-size-fits-all formula for determining whether a particular notice satisfies due process. However, "[a] primary purpose of the notice required by the Due Process Clause is to ensure that the opportunity for a hearing is meaningful." *City of West Covina v. Perkins*, 525 U.S. 234, 240, 119 S. Ct. 678, 681, 142 L. Ed. 2d 636 (1999). To allow a penalized employee to meaningfully appeal, the General Assembly chose to specify in KRS 18A.095(8) what details the agency must provide the suspended employee. The Letter did not provide Godsey with anything resembling those mandatory details. A document without **_any_** who/what/when/where details does not satisfy due process nor KRS 18A.095(8). "For due process purposes, the opportunity to guess at the factual and legal bases for government action does not substitute for actual notice of the government's intentions." 16B AM. JUR. 2D *Constitutional Law* § 976 (2024).

-10-

Contrary to the Agencies' assertion, KRS 18A.095(8) only required providing basic information readily known to Justice Training, such as the dates of the alleged misconduct and the persons involved in that conduct. Information the agency did not ascertain until the investigation progressed could, of course, not be contained within an initial notification letter. But the basic, fundamental reasons Justice Training chose to place Godsey on investigatory suspension were known – had to be known – prior to sending him the Letter.

In sum, KRS 18A.095(8) really only required Justice Training to comply with Godsey's basic due process rights. Wisely or not, the General Assembly made a policy decision when it placed language in the applicable version of KRS 18A.095(8) which allowed a person suspended with pay the right to challenge the suspension. An employee must have adequate notice and an opportunity to be heard – *i.e.*, due process – to meaningfully mount such a challenge. Requiring the protective details of due process be given to a person in Godsey's position arguably was an unwise policy decision, but it was not absurd.

Finally, we decline the Agencies' seeming invitation to refuse to enforce KRS 18A.095(8) because the notification requirements are unwise or impractical. At their core, those are public policy arguments and "[t]he enunciation of public policy is the domain of the General Assembly." *Pyles v. Russell*, 36 S.W.3d 365, 368 (Ky. 2000). For over a century Kentucky precedent

-11-

has held that "the propriety, wisdom, and expediency of legislation is exclusively a legislative question, and courts are not at liberty to declare a statute invalid because, in their judgment, it may be unnecessary, or opposed to the best interests of the state." *Craig v. O'Rear*, 199 Ky. 553, 251 S.W. 828, 830 (1923). Alternately stated, "the courts cannot ignore the plain meaning of a statute simply because another meaning might be considered to be a better policy." *Jones*, 809 S.W.2d at 716.

We understand the logic behind the Agencies' arguments regarding the potential drawbacks to providing upfront to employees placed on investigatory leave certain details, such as names of the relevant witnesses or complainants. Nonetheless, the General Assembly chose to require an agency to provide those details to *any* penalized employee. We cannot refuse to enforce a valid statute simply because the impacted parties believe it to be impractical or unwise.[6]

Further arguments in the parties' briefs have been determined to lack merit or relevancy to our resolution of the appeal.

For the foregoing reasons, the Franklin Circuit Court is affirmed.

ALL CONCUR.

---

[6] The General Assembly has, essentially, legislatively adopted the Agencies' arguments going forward since the notification requirements of KRS 18A.095(8) no longer apply to paid suspensions.

-12-

BRIEFS FOR APPELLANTS:

Rosemary Holbrook
Erritt Griggs
Robin Cornette
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Paul F. Fauri
Frankfort, Kentucky