Ineido CEPERO; and Hon. Donald
G. Smith, Administrative Law
Judge, Appellants,

v.

FABRICATED METALS CORPORA-
TION; and Workers' Compensa-
tion Board, Appellees.

No. 2002–SC–1068–WC.

Supreme Court of Kentucky.

April 22, 2004.

Brentley P. Smith, Sampson, Smith & Slechter, PLLC, Louisville, KY, Counsel for Appellant Ineido Cepero.

Judson F. Devlin, Louisville, KY, Counsel for Appellee Fabricated Metals Corporation.

Opinion of the Court by Justice COOPER.

Appellant, Ineido Cepero, a native of Cuba, has lived in the United States since November 12, 1995. He testified that on December 23, 1997, while employed by Appellee, Fabricated Metals Corporation, his feet became tangled in wire, causing him to fall and bump his left knee against a cabinet. His employer referred him to CARITAS Occupational Health Center. CARITAS's medical records reflect that Appellant gave a history of falling and hurting his left knee at work. Examination of the knee revealed that it was stable and not swollen. The diagnosis was contusion and strain of the left knee. Appellant was treated with pain medication (Ibupro-

fen) and returned to work. He continued to work until March 1998.

On December 30, 1997, Appellant saw Dr. Louise Box and told her that he had broken his knee three years ago while practicing martial arts in Cuba, which resulted in wheelchair confinement for three months. Although surgery had been recommended, it was never performed. He did not mention the work-related accident that occurred one week earlier. Dr. Box referred Appellant to the office of Drs. Leonard Goddy and Thomas Loeb, orthopedic surgeons.

Dr. Goddy saw Appellant on January 15, 1998, approximately three weeks after the work-related accident. Appellant did not mention that accident but described a twisting valgus injury that occurred while practicing martial arts in Cuba two and one-half years earlier. He told Dr. Goddy that his knee was swollen and painful after the martial arts injury, that he had spent *two* months in a wheelchair, and that he had experienced "good days and bad days" since that time. Dr. Goddy diagnosed Appellant with "disruption of the anterior cruciate ligament [ACL], disruption of lateral collateral ligament knee, left." Dr. Loeb surgically repaired Appellant's knee on March 30, 1998. A second surgery was performed on November 17, 2000, after Appellant's knee worsened. (Appellant testified that the worsening did not result from a second accident but from "the same problem.") During the second surgery, Dr. Loeb reconstructed Appellant's ACL and removed part of his medial meniscus. Dr. Loeb testified that injuries to the medial meniscus and ACL are typically caused by valgus-type injuries in which the ankle is forced away from the midline of the body, thus pushing the lower leg outward and the knee inward. For this reason, and because a torn ACL cannot repair itself, he attributed the cause of Appellant's present

disability to the martial arts accident that occurred in Cuba:

> [W]hen you tear your ACL, you tear it and you can get by for awhile, but it doesn't just repair and re-tear. So I have to believe this inciting injury was, at least based on the history he gave to both Dr. Box and Dr. Goddy, was that he originally injured this knee apparently in Cuba.

Dr. David Changaris examined Appellant on February 2, 2001, upon referral from Appellant's attorney. Dr. Changaris did not testify, but his findings and conclusions were presented in the form of a medical report. The report refers only to the history of the December 23, 1997, work-related accident and makes no mention of the twisting valgus injury that Appellant had described to Drs. Box and Goddy. Unsurprisingly, Dr. Changaris attributed Appellant's knee injury entirely to the work-related accident.

On April 27, 2001, Dr. Ellen Ballard examined Appellant on behalf of Fabricated Metals. She testified that Appellant attributed his knee injury solely to the 1997 work-related accident and specifically denied any prior injury to his left knee. Based on that history, she had prepared a medical report attributing the cause of his disability to the work-related injury. However, when shown the records of Drs. Box and Goddy at her deposition, she changed her opinion and testified that the injury "more likely than not" was caused by the martial arts accident in Cuba. She agreed with Dr. Loeb that a twisting valgus injury is "[c]lassically ... associated with an injury of the medial ligament, the ACL and the meniscus."

Appellant testified twice, first at a discovery deposition on May 29, 2001, then again at the formal hearing before the Administrative Law Judge (ALJ) on August 28, 2001. During the discovery deposition, Appellant denied the occurrence of the prior injury in Cuba.

> Q. Have you ever been injured in any kind of sporting or recreational activities?
>
> A. No.
>
> Q. When you were involved in sports in Cuba, did you ever injure yourself?
>
> A. No.
>
> Q. Before December 23, 1997, had you ever injured your knee in any kind of accident or injury?
>
> A. No.
>
> Q. Before December 23, 1997, had you ever had medical treatment for your left knee?
>
> A. No.

However, when confronted with Dr. Goddy's records containing the history of the martial arts injury, Appellant claimed that the injury had occurred "fifteen years ago" and was "no big deal." He flatly denied spending two months in a wheelchair.

During direct examination at the formal hearing, Appellant again asserted that the martial arts injury occurred "when I was a boy, but it's no big deal." During cross-examination, he suggested that because of a "language barrier," both Drs. Box and Goddy had misunderstood the time frame of his previous injury. When asked again whether he had spent two months in a wheelchair, he replied:

> I was in the wheelchair maybe it's one month and a half, maybe not complete two months.... Maybe they put me in a wheelchair because for not walking, don't damage it any more before we go to the competition. That's it. But I think it's no big deal.... It swell, hurt, my knee. But that's it. It's no big problem.

Appellant also described his December 23, 1997, injury as "no big deal" and testified that he only went to CARITAS at the direction of his employer. When asked why he did not tell Drs. Box or Goddy about the work-related injury, he insisted that he had described the injury to both doctors and that they must have misunderstood him because of the aforementioned "language barrier."

Despite Appellant's contradictory testimony about his medical history, the ALJ concluded that Appellant's left knee problems were caused by the accident that occurred on December 23, 1997, explaining:

> In light of all this evidence, the Administrative Law Judge did find the Plaintiff to be credible regarding the circumstances of his injury on December 23, 1997. When supported by the testimony [sic] of Dr. Changaris and the medical records from CARITAS Occupational Health Center, as well as Dr. Ballard's original findings on examination, the Administrative Law Judge does believe that the Plaintiff's current left knee problems were caused by the work injury on December 23, 1997.

Reversing, the Workers' Compensation Board unanimously held that the ALJ's conclusion as to causation was not supported by substantial evidence. The Court of Appeals affirmed.

▮▮▮ "Substantial evidence means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Smyzer v. B.F. Goodrich Chem. Co.*, Ky., 474 S.W.2d 367, 369 (1971) (citation omitted). The ALJ's finding that Appellant was credible regarding the circumstances of his December 23, 1997, injury is immaterial. No one claims that the work-related injury, which Appellant himself characterized as "no big deal," did not occur.

The issue is whether that injury caused the disruption of the anterior and lateral collateral ligaments of Appellant's left knee, which all of the physicians identified as the cause of Appellant's present disability. "Where the question at issue is one which properly falls within the province of medical experts, the fact-finder may not disregard the uncontradicted conclusion of a medical expert and reach a different conclusion." *Magic Coal Co. v. Fox*, Ky., 19 S.W.3d 88, 96 (2000) (citing *Mengel v. Hawaiian–Tropic Northwest & Cent. Distribs., Inc.*, Ky., 618 S.W.2d 184, 186 (1981)). Of course, there were contradictory medical conclusions, some based on an accurate history and others based on an inaccurate history. The Board concluded that the opinions as to causation expressed in the medical reports of Drs. Changaris and Ballard were not of sufficient "fitness to induce conviction in the minds of reasonable men" because those opinions relied upon inaccurate or incomplete information furnished by Appellant during their respective independent medical examinations.

> [I]n cases such as this, where it is irrefutable that a physician's history regarding work-related causation is corrupt due to it being substantially inaccurate or largely incomplete, any opinion generated by that physician on the issue of causation cannot constitute substantial evidence. Medical opinion predicated upon such erroneous or deficient information that is completely unsupported by any other credible evidence can never, in our view, be reasonably probable. Furthermore, to permit a ruling of law to stand based upon such evidence that is not reliable, probative and material would be fundamentally unjust. We therefore conclude the opinions of Dr. Changaris and, to a limited degree, the earliest opinions of Dr. Ballard on causa-

tion, do not measure up as substantial evidence, and it was error for the ALJ to blindly elect to adopt their flawed conclusions to support any ruling of law.

*Cepero v. Fabricated Metals Corp.*, No. 01–00361, slip op. at 18–19 (Ky. Workers' Comp. Bd. Mar. 6, 2002). *See W. Baptist Hosp. v. Kelly*, Ky., 827 S.W.2d 685, 687– 88 (1992) (board's appellate decisions are reviewed for errors in construing statutes or precedent or for errors in assessing the evidence *"so flagrant as to cause gross injustice"*) (emphasis added). *Cf. Osborne v. Pepsi–Cola*, Ky., 816 S.W.2d 643, 647 (1991) ("If the history is sufficiently impeached, the trier of fact may disregard the opinions based on it. After all, the opinion does not rest on the doctor's own knowledge, an essential predicate to make uncontradicted testimony conclusive.") (citations omitted), *superseded by statute on other grounds as stated in Smith v. Dixie Fuel Co.*, Ky., 900 S.W.2d 609, 612 (1995).

Appellant would have us infer that Dr. Changaris must have known of the history given to Dr. Goddy because his report states that his opinion as to causation is "[b]ased upon client [sic] history, medical records, and physical examination." However, Dr. Changaris did not testify in this case and his medical report does not mention either Dr. Goddy or Appellant's true medical history. The report refers only to Dr. Loeb's diagnosis and treatment. We note at this point that Dr. Ballard testified that she had not been furnished with the history record prepared by Dr. Goddy, but only with the treatment records of Dr. Loeb. In the absence of proof, we will not assume that any competent medical examiner would be aware of but fail to mention a history of a prior injury to the exact same part of the body for which compensation is sought, especially a prior injury that resulted in two months' confinement to a wheelchair and a recommendation of sur-

gery. We assume, instead, that Dr. Changaris was unaware of that history.

Accordingly, we affirm the decision of the Court of Appeals.

GRAVES, JOHNSTONE, and KELLER, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion, with LAMBERT, C.J., and STUMBO, J., joining that dissenting opinion.

Dissenting Opinion by Justice WINTERSHEIMER.

I must respectfully dissent from the majority opinion because the award of the Administrative Law Judge was supported by substantial evidence and it should not have been disturbed on appeal. The decision of the ALJ was reversed by the Workers' Compensation Board and that reversal was affirmed by an opinion of a panel of the Court of Appeals.

If the decision of the ALJ is supported by any substantial evidence of probative value, it may not be reversed on appeal. *Special Fund v. Francis*, Ky., 708 S.W.2d 641 (1986); *Newberg v. Armour Food Co.*, Ky., 834 S.W.2d 172 (1992). The ALJ, as fact-finder, has sole authority to determine the weight, credibility, substance, and inferences to be drawn from the evidence. *Paramount Foods, Inc. v. Burkhardt*, Ky., 695 S.W.2d 418 (1985). When conflicting evidence is presented, the ALJ may choose whom and what to believe. *Pruitt v. Bugg Brothers*, Ky., 547 S.W.2d 123 (1977). The ALJ has the right to believe part of the evidence, and disbelieve other parts of the evidence whether it came from the same witness or the same total proof. *Caudill v. Maloney's Discount Stores*, Ky., 560 S.W.2d 15, 16 (1977).

Cepero, a native of Cuba now living in Kentucky, admitted having sustained a prior injury years earlier while performing

martial arts in Cuba, but claimed that when he left there, he had no problem with his knee. When asked why he did not relate to Drs. Goddy and Box that he had injured his knee at Fabricated Metals, Cepero insisted that he did but that they simply did not understand him because of a language barrier.

The ALJ acknowledged the discrepancy in Cepero's testimony, but still found him to be a credible witness regarding his claim that his present condition was work related. Based on his testimony, the records from Caritas Occupational Health Center, the report of Dr. Changaris, and the initial opinion of Dr. Ballard, the ALJ found that Cepero's present disability from the left knee was caused by the work-related injury at Fabricated Metals. He granted benefits based on a 10% permanent partial disability rating.

The report by Dr. Changaris states that, "based upon client history, medical records, and physical examination, the above impairment is solely due to the work related injury of 12–23–97." This statement is substantial evidence to support the award. The Board and the Court of Appeals, however, found that in rendering his opinion, Dr. Changaris was never apprised of the prior martial arts injury and thus they concluded his opinion was not reliable. Fabricated Metals states that there is no evidence in the record that Dr. Changaris had the report from Dr. Goddy. I disagree.

In his report, Dr. Changaris states, "The client began having problems with his knee and was evaluated on 1–15–98 by Dr. Thomas Loeb." My review of the record indicates that Dr. Goddy, not Dr. Loeb, performed the evaluation on the 15th. Dr. Loeb stated in his deposition that his partner, Dr. Goddy, took the initial history and saw Cepero again on February 12, but because Dr. Goddy was not doing ACL

reconstructions at that time, he referred the patient to him. The improper attribution is of no consequence.

It is clear that Dr. Changaris reviewed the report by Dr. Goddy because he quotes parts of his one page, January 15, 1998 report almost verbatim. For instance, Dr. Goddy states in his report that his clinical impression is, "Disruption anterior cruciate ligament, disruption of lateral collateral ligament knee, left." Dr. Changaris notes in his report that "[Dr. Loeb—read Dr. Goddy] diagnosed the client with a disruption anterior cruciate ligament, disruption lateral collateral ligament of the left knee and medical meniscus tear." Also, Dr. Goddy recommends "progressive resistive exercises" and states that Cepero is "probably a candidate for and ACL reconstruction." Dr. Changaris observes in his report that, "progressive resistive exercises were prescribed" and that Dr. Loeb indicated that Cepero was "a candidate for ACL reconstruction."

Although Dr. Changaris' report does not specifically mention the prior martial arts injury, I cannot reasonably infer that he failed to review it or consider it. The first paragraph of Dr. Goddy's medical report noted the following:

A practitioner of martial arts, some 2–1/2 years ago while still a resident in Cuba, [Cepero] sustained a twisting vulgas injury to the left knee. Following that, he had marked swelling and inflammation in the knee and spent some two months in a wheelchair.

Considering the history taken by Dr. Changaris from the January 15 report, the proper inference is that he was fully aware of Cepero's prior martial arts injury After careful review of the record, I must conclude that the opinion and award of the ALJ was supported by substantial evi-

dence and should not have been disturbed on appeal.

LAMBERT, C.J., and STUMBO, J., join this dissent.