# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

*THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28 (4) (c), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS AUTHORITY IN ANY OTHER CASE IN ANY COURT OF THIS STATE.*

RENDERED: AUGUST 24, 2006
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2005-SC-0918-WC

FINAL

DATE 9-14-06 EウィスGウハトリ.P.C.

SPADE CORPORATION                                                      APPELLANT

APPEAL FROM COURT OF APPEALS
V.                          NO. 2005-CA-1096-WC
WORKERS' COMPENSATION NO. 2003-80043-WC

SECUNDINO DeLEON; HON. JOHN W.
THACKER, ADMINISTRATIVE LAW
JUDGE; AND WORKERS'
COMPENSATION BOARD                                                    APPELLEES

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

This appeal is from a Court of Appeals opinion affirming the decision of the Workers' Compensation Board that affirmed the decision of the Administrative Law Judge, finding that DeLeon sustained a work-related injury resulting in an 11% permanent partial impairment, of which Spade Corporation received adequate notice.

Spade argues that the decision to award benefits based on an 11% functional impairment is not supported by substantial competent evidence and that the evidence does not establish causation. It contends that the award of the ALJ should be reversed and the case dismissed.

In June of 2000, DeLeon began working for Spade as a laborer. A Pre-Placement Medical Evaluation completed through Urgent Treatment Center indicated that DeLeon was able to perform his job without restriction. His job duties included working with tanks and pipes, some of which weighed 150 pounds or more. As a part of his job, DeLeon was required to pick up one end of the pipe, and place a strap around it. DeLeon testified that on May 2, 2003, he experienced pain in his low back while lifting a 10-12 foot pipe that weighed in excess of one hundred pounds. Because there was not a foreman present at the job-site, he notified Dan Jefferson, the job-site supervisor, that he had hurt his back. Mr. Jefferson testified that he could not recall working with DeLeon, and could not recall a discussion about his injury. DeLeon stated that his back continued to worsen over the weekend, and by May 4, 2003, his pain was so severe that he decided to go to the hospital.

During the hospital examination, a physician asked DeLeon what he had been doing when he felt pain in his back. DeLeon replied that he was holding a child's bicycle wheel that someone had discarded. DeLeon indicated that when asked by the treating physician about his occupation, he informed the physician that he worked picking up pipes. DeLeon explained that he does not speak English very well, and that he has difficulty in both reading and writing in English. He has only completed second grade while in Mexico, and has no further education or specialized vocational training.

On May 5, 2003, DeLeon saw Dr. Cedric Craig, his family physician, on advice from the emergency room physician. Dr. Craig gave DeLeon a note indicating that he would not be able to return to work pending an appointment with an Orthopedic Specialist; however, the excuse slip indicated by way of a check-marked box that it was due to illness rather than injury. Spade's Vice President, Ken Sturgill, testified that on

2

May 5, 2003, he received the first of two excuse slips from DeLeon. On May 23, 2003, he received the second excuse slip. The second slip also had the wrong box marked, but below the pre-preprinted area of the slip was a handwritten note explaining that the absence was the result of a problem with his back and pending an appointment with an Orthopedic Specialist on May 30, 2005.

On May 8, 2003, Dr. Christopher Stephens evaluated DeLeon. In his note, Dr. Stephens reported that DeLeon was experiencing low back pain since the previous weekend, which had been getting better with treatment of prescription medication. Dr. Stephens's overall impression was a possible annular tear, and he did not think surgery would be necessary. He told Mrs. DeLeon to bring DeLeon back to see him if his pain persisted beyond the next month.

On May 30, 2003, DeLeon had his first visit with Dr. Harry Lockstadt, an Orthopedic Specialist. Dr. Lockstadt's notes indicate that the primary complaint was low back pain and left leg pain and that he reported first experiencing this pain after bending over to lift pipes at work. Dr. Lockstadt administered a cortisone injection which did not provide any significant relief. An MRI of the low back revealed degenerative disc with L4-5 herniation irritating the L5 nerve root. Dr. Lockstadt recommended epidural steroid injections, and if the injections were unsuccessful, DeLeon would be a candidate for a diskectomy.

On June 12, 2003, DeLeon received an epidural steroid injection, and while there were a few days of improvement immediately following the injection, he was still experiencing significant pain in his low back. Dr. Lockstadt recommended another epidural steroid injection, which was administered on July 10, 2003. On August 21, 2003, DeLeon reported to Dr. Lockstadt that his symptoms had increased and now

3

included back pain, left lower extremity pain, intermittent parathesias and dysesthesias in the left foot, difficulty walking, and that his left leg was dragging. On August 25, 2003, a CT lumbar spine revealed a moderate sized left paracentral disc herniation mildly extruded inferior which compressed the L5 nerve root sleeve extending partially into the left lateral canal recess and a L5-S1 tiny central disc herniation without compressing nerve structures.

On January 29, 2004, Dr. James Owen evaluated DeLeon. DeLeon reported to Dr. Owen the injury to his low back that he received while lifting the heavy pipe at work. DeLeon also reported a previous back problem for which he saw Dr. Craig in 1999, and Dr. Owen's report indicates that DeLeon did not miss any work from the prior back pain and he indicated he was in severe pain since the work-related accident that occurred on May 2, 2003. Dr. Owen noted severe pain that radiated to DeLeon's left leg, and was now greater in his leg than in his back. Dr. Owen reviewed the medical notes of Dr. Lockstadt and Dr. Craig, and diagnosed DeLeon with persistent L5 radiculopathy with back and leg pain. Dr. Owen found within reasonable medical probability, that the injury was the cause of his low back pain. Dr. Owen specifically noted that no part of DeLeon's condition was attributable to natural aging or another pre-existing dormant or nondisabling condition. Dr. Owen's report further noted that DeLeon should have a work restriction of lifting no more than ten pounds, with no bending, squatting, or stooping. Using the American Medical Association's Physician's Guide to the Evaluation of Permanent Impairment, Dr. Owen assessed an 11% whole person impairment, DRE Category III, for an ADL of 4/10.

On February 2, 2004, Dr. William Lester evaluated DeLeon on behalf of Spade. DeLeon provided Dr. Lester with his relevant personal and medical history. Spade's

4

evaluation form asked Dr. Lester: "Based on your examination and evaluation of the claimant, what is your diagnosis?" Dr. Lester completed this answer with the phrase "Lumbar disc at L4-5." He also stated that this condition was a result of the previous injury. Dr. Lester reported that he would restrict DeLeon's activities to no lifting over fifty pounds in relation to the previous injury.

Considering the evidence on the record as a whole, the ALJ determined that DeLeon suffered a work-related injury on May 2, 2003, that Spade had adequate notice of this injury, and that the work-related injury resulted in a 11% permanent partial impairment. The Workers' Compensation Board and the Court of Appeals affirmed the ALJ's findings as based on substantial medical evidence in the record.

On appeal, Spade's primary argument is that decision of the ALJ was not supported by substantial evidence because the method the ALJ used to find causation was based upon impermissible inferences not supported by the record. Spade contends that the ALJ may not pick and choose from the evidence in such a manner as to destroy the evidence's meaning, and that the similarity of facts of the present case to the facts of Cepero v. Fabricated Metals Corp., 132 S.W.3d 839 (Ky. 2004), would ruin any claim that the ALJ's decision was based on substantial evidence.

When the decision of the fact-finder favors the person with the burden of proof, the issue on appeal is whether the ALJ's decision is supported by substantial evidence in the record. Wolf Creek Collieries v. Crum, 673 S.W.2d 735, 736 (Ky. App. 1984). As the fact-finder, the ALJ has the sole authority to determine the weight, credibility, substance, and inferences to be drawn from the evidence presented. Paramount Foods, Inc. v. Burkhardt, 695 S.W.2d 418, 419 (Ky. 1985). Furthermore, it is within the province of the fact-finder to determine the quality, character and substance of the

testimony, and when there is conflicting evidence, the fact-finder's factual determinations should not be disturbed. Pruitt v. Bugg Bros., 547 S.W.2d 123, 125 (Ky. 1977).

Ordinarily the determination of causation is one properly within the province of medical experts. Mengel v. Hawaiian-Tropic Nw. & Cent. Distrib., Inc., 618 S.W.2d 184, 186 (Ky. 1981). However, the medical evidence submitted in this case was in conflict, therefore it became the primary responsibility of the ALJ, as fact-finder, to resolve the conflicts in the medical testimony. Paramount, supra. As fact-finder, the ALJ may reject any testimony and believe or disbelieve various parts of the evidence regardless of whether it comes from the same witness or the same adversary party's total proof. Magic Coal Co. v. Fox, 19 S.W.3d 88, 96 (Ky. 2000). Furthermore, the ALJ's findings on causation would only be reversed if there was no substantial evidence of probative value to support the ALJ's decision. Special Fund v. Francis, 708 S.W.2d 641, 644 (Ky. 1986).

After reviewing in great detail all the medical records, the ALJ accepted Dr. Owen's medical findings that the work-related injury was the cause of DeLeon's symptoms. While the physician employed by the employer attributed the low back pain to a prior injury sustained by DeLeon, the ALJ relied on several other probative factors taken from the record as a whole to support the decision of causation. The ALJ based his findings on several substantial factors including: (1) DeLeon's testimony that he informed the job-site supervisor of the injury he sustained while lifting a 10-12 foot pipe weighing over one hundred pounds, (2) the excuse slips which provided substantial evidence of a recent injury, (3) DeLeon's testimony that he told Sturgill he picked up one heavy pipe and experienced an onset of back pain, (4) the facts that Dr. Owen had

6

reviewed the medical records of Dr. Lockstadt and Dr. Craig before concluding that the workplace injury was the cause of DeLeon's impairment, (5) Dr. Owen's medical assessment that DeLeon did not have an active prior impairment which was supported by the fact that DeLeon worked for Spade as a laborer lifting pipes weighing over one hundred pounds for three years prior to the accident, and (6) the presence of a second herniation at L5-S1, present on the 2003 MRI but not in the 1999 MRI. Because the ALJ's findings are not so unreasonable in relation to the evidence of record, they should not be disregarded as a matter of law. Ira A. Watson Dept. Store v. Hamilton, 34 S.W.3d 48, 51 (Ky. 2000).

Spade further asserts that the facts in Cepero, supra, are sufficiently analogous to the present case as to have compelled the ALJ to find a lack of substantial evidence to support causation. Spade's reliance on Cepero is misplaced, however, because in Cepero the claimant mislead a medical evaluator by characterizing his previous knee injury as "no big deal", when the previous injury had caused him to spend two months in a wheelchair. Id. In contrast, DeLeon did not attempt to conceal his prior symptoms of back pain in 1999 from his treating physicians or the medical evaluators. Dr. Owen and Dr. Lester each noted in their respective evaluations that DeLeon disclosed his prior symptoms of back pain. The Court of Appeals, in a unanimous decision affirming and adopting the opinion of the Workers' Compensation Board, explained the distinguishing facts of the present case were more analogous to this Court's decision in Osborne v. Pepsi-Cola Co., 816 S.W.2d 643, 647 (Ky. 1991), such that the decision to disregard medical evaluations based on other impeaching evidence is at the discretion of the ALJ.

7

The ALJ's determination of causation was supported by substantial evidence and is not so unreasonable based on the evidence of record to be disregarded as a matter of law. We must affirm the opinion of the Court of Appeals.

All concur.


COUNSEL FOR APPELLANT:

Charles E. Lowther
BOEHL, STOPHER & GRAVES, LLP
444 West Second Street
Lexington, KY 40507


COUNSEL FOR APPELLEE DeLEON:

Theresa Gilbert
DENNEY, MORGAN, RATHER &
GILBERT
156 Market Street
Lexington, KY 40507