# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: JUNE 20, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0333-WC

MICHAEL HARDIN        APPELLANT

V.

ON APPEAL FROM COURT OF APPEALS
NO. 2023-CA-1250
WORKERS' COMPENSATION NOS.
WC-20-99700, WC-21-00756 & WC-21-00795

FORD MOTOR COMPANY; HON.        APPELLEES
MONICA J. RICE-SMITH,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Michael Hardin has appealed from the decision of the Court of Appeals which affirmed a decision of the Workers' Compensation Board ("Board") affirming an Administrative Law Judge's ("ALJ") Opinion and Order denying his three consolidated claims for benefits for failure to prove that he sustained any permanent work-related injuries. The sole issue in this appeal is whether the evidence compelled an award for a work-related repetitive motion injury. Having carefully reviewed the record, law, and briefs, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

In 2012, Hardin began employment with Ford Motor Company as an assembly line worker at the Louisville Plant. The ALJ summarized Hardin's testimony relative to his job duties as follows:

> He worked on the roof bowls job. He affixed roof bowls onto the tops of vehicles in production. The job required him to work with his arms extended for prolonged periods and bend at the waist. He processed about 850 to 875 units a shift. On June 25, 2018, he transferred to the Ford Truck plant. On April 22, 2019, he began working in the rag fill position on the line. The job required him to screw two bolts into the grill and put the windshield wiper plugs together. He also had to wait for the hoses to get filled up in different areas of the truck and then remove the hoses. He then hit a button sending the carrier back. He would scan the cameras that go in the trucks and throw them in the bed. He had to bend down to the bottom of the front of the car and put a reader on the air conditioner. He also had to adjust the reader volume. The drill gun used to place the screws in the grill weighed about 13 pounds. He had to carry it with him, it was not one suspended from the ceiling. The hoses he removed weighed four pounds, 12 pounds, and 14.7 pounds. There were different types of trucks, so he was taking the hoses off at different heights and angles every time. The job required him to reach out from his body and above his shoulders. He had to bend up and down. The work was repetitive and fast pace[d]. He processed 870 to 900 units a shift.

On May 26, 2019, Hardin slipped and fell onto his left hip, back, and left elbow while walking around the back side of a truck. He reported the injury to Ford and sought medical treatment. Hardin did not miss any time from work except for the remainder of the shift. However, he did require assistance with his duties for four days immediately following the fall. He was never placed on any formal restrictions, but testified he continued to experience soreness in his elbow.

2

On December 3, 2019, Hardin slipped and fell while walking down a ramp after putting hoses in a carrier. He felt immediate pain in his low back but finished the remaining 30 minutes of his shift before returning home. Over the weekend, Hardin alternatively applied heat and ice to his back, but the pain did not subside. He reported the injury to Ford at his next shift and was placed on light duty. Although he did not miss work, his back pain persisted.

On March 15, 2020, Hardin experienced numbness and the feeling of electricity in the web between the forefinger and thumb of his left hand. The ALJ summarized Hardin's testimony relative to this injury as follows:

> As the weeks went by, it got worse. It started shooting pain up his arm to his elbow. His fingertips started to burn. During the time from March 2020 to June 2020, the plant was shut down for a month due to COVID. When Hardin returned to working using the vibratory tool to shoot the bolts and moving the hoses, it kept getting worse. On June 9, 2020, he went to medical. The doctor at medical sent him to Kleinert & Kutz. Kleinert & Kutz gave him a shot in his hand and advised it could be coming from his neck. He started treating with Dr. Becherer for his neck. After obtaining an MRI and EMG, Dr. Becherer eventually performed two cervical surgeries. The first surgery was December 7, 2020. After surgery, Hardin was off work until May 2021. He returned to work on light duty handing out COVID masks on May 27, 2021. He continued handing out masks until October 15, 2021. He underwent a second surgery on October 27, 2021. Dr. Becherer referred him to Dr. Steven Reiss on March 16, 2022. Dr. Reiss performed a myelogram and EMG. He recommended a third surgery. Hardin did not undergo the third surgery because Dr. Reiss could not guarantee it would help him. Dr. Reiss sent him to KORT for an FCE and placed him on permanent restrictions.
>
> Hardin continues to have stiffness in his neck. He does not have much movement in his neck. He cannot lift any weight with his left arm. He has pain and stiffness in his left elbow every morning. He wears a brace on his elbow. At his deposition, he testified that he did not have any issues with his low back. At the final hearing, he testified he has stiffness, aches, and pains when he tries to get out of the bed. He testified that the walking he does while putting

3

out the masks at work causes back pain.  He has pain through the lower back up to the top of his shoulders.  He still mows his grass, but it takes him longer than before.  He is unable to golf or bowl.  He has difficulty sleeping due to his pain.  He currently takes Flexeril for back spasms.  He does not believe he could return to any of his pre-injury jobs on the assembly line.  He believes he is totally disabled.

On May 19, 2021, Hardin filed a Form 101 Application for Resolution of a Claim relative to the elbow injury he sustained on May 26, 2019.  He filed a second Form 101 on the same day seeking an award of benefits pertaining to the low back injury occurring on December 3, 2019.[1]  On May 26, 2021, Hardin filed a third Form 101, claiming benefits for a repetitive motion injury that manifested on March 15, 2020.  On August 4, 2021, the ALJ entered an order consolidating the claims.

On February 16, 2023, the ALJ entered an Opinion and Order denying Hardin's claims for failure of proof.  Relative to the claims for elbow and low back injuries, the ALJ relied primarily on the medical opinions of Dr. Thomas Loeb and Dr. James Farrage and specifically found:

> Hardin sustained temporary injuries on May 26, 2019, and December 2, 2019.  Dr. Loeb and Dr. Farrage, the evaluating physicians of Ford and Hardin, agree that Hardin's May 26, 2019 elbow injury and December 2, 2019 low back injury were temporary injuries which resolved and resulted in no permanent impairment.
>
> Dr. Loeb, Ford's evaluating physician, opined the May 26, 2019 elbow injury and December 2, 2019 low back injury [were] temporary.  He opined the elbow and low back injuries were minor and resolved.  With regard to the May 26, 2019 injury, he diagnosed a transient lumbar strain and left elbow contusion

---

[1] Hardin's Form 101 indicated the low back injury occurred on December 2, 2019.  However, the parties later stipulated the injury occurred on December 3, 2019.

4

which have long since resolved.  Similarly, for the December 2, 2019 injury, he diagnosed transient lumbosacral strain which had long since resolved.  He advised Hardin reached MMI within three months of each injury date.  He opined neither injury resulted in any long-standing harmful change.  There was no need for any further treatment or restrictions for either injury.  He found neither injury warranted any permanent impairment rating.

Even Dr. Farrage, Hardin's evaluating physician, found no permanent injuries resulting from the May 26, 2019 injury or the December 2, 2019 injury.  While he did not specifically provide opinions regarding the specific injury dates, he did address the body parts injured.  He diagnosed a resolved lumbar myoligamentous strain injury and provided no diagnosis at all for the left elbow.  He specifically noted Hardin reported his low back symptoms were essentially resolved and he denied any associated radicular component of persistent groin pain.  Dr. Farrage assessed no permanent impairment for the low back or left elbow.

The ALJ further found insufficient evidence of a repetitive motion injury to Hardin's left arm and neck and particularly emphasized that

Dr. Farrage's report does not support a repetitive motion injury.  First, his report is based on an inaccurate account of the alleged injury.  He does not even note a March 15, 2020 injury nor does he note the nature of the injury alleged by Hardin.  Hardin alleged a repetitive motion injury with the development of symptoms which gradually progressed.  Dr. Farrage does not document the history of pain beginning in the hand and progressing up the arm that Hardin supplied in his testimony.  His report contains no discussion of any repetitive job duties or gradual progression of symptoms, instead he notes a specific incident on November 30, 2020, that he notes aggravated the left arm symptoms and cervical involvement.  This injury date is not mentioned in any other reports or in Hardin's own testimony.

Additionally, Dr. Farrage's report does not contain any discussion of Hardin's work activities.  Although, he indicates Hardin's overall clinical presentation and historical account are consistent with the proposed mechanism of injury, the mechanism of injury noted in his report is not the same mechanism alleged by Hardin.  Again, his report documents a specific incident and does not discuss any repetitive work activities.  Finally, when he discusses the axial loading and lateral shear forces experienced by the cervical spine, he states they resulted in an "acute" disc herniation, which would

5

indicate a sudden onset not the gradual progression and repetitive cumulative injury alleged by Hardin. Dr. Farrage's report simply does not support any injury resulting from repetitive job duties.

Hardin filed a petition for reconsideration asserting the ALJ had erred by failing to award temporary total disability ("TTD") and medical benefits for each injury. Additionally, he requested the ALJ to correct the date of the low back injury in accordance with the parties' stipulations of fact. Hardin further contended the ALJ misinterpreted the medical proof concerning the repetitive motion injury and that the ALJ's reliance on *Cepero v. Fabricated Metals Corp.*, 132 S.W.3d 839 (Ky. 2004), was misplaced.

In an order entered on March 22, 2023, the ALJ granted Hardin's request for medical benefits but rejected his claim for TTD. The ALJ also granted Hardin's request to correct the typographical error concerning the date of his low back injury. However, the ALJ denied the petition for reconsideration relative to the repetitive motion injury, stating:

> The ALJ explained her rationale and reasoning for finding Dr. Farrage's report was not substantial evidence proving a repetitive or cumulative trauma injury.

> In the last paragraph on page 8 of the opinion, the ALJ provides her multiple specific reasons for finding Dr. Farrage's opinion does not support a repetitive trauma injury. Finally, it is not that Hardin intentionally hid anything from any physician, but his history of a gradual injury is not consistent with the acute injury described and diagnosed by Dr. Farrage.

Hardin appealed to the Board, arguing the ALJ had misinterpreted the evidence concerning the repetitive motion injury and misapplied *Cepero*. He did not appeal any issues relative to the ALJ's denial of benefits pertaining to his elbow and low back injuries. The Board affirmed. Hardin thereupon

6

appealed to the Court of Appeals, reasserting the same limited arguments. The Court of Appeals affirmed. This appeal followed.

## LAW AND ANALYSIS

Review from an ALJ's decision on a workers' compensation claim proceeds on three levels. *Lexington Fayette Urban Cty. Gov't v. Gosper*, 671 S.W.3d 184, 199 (Ky. 2023). "The Board performs the first level of review[,]" as set forth in Kentucky Revised Statute (KRS) 342.285, and functions essentially to correct error, "though without the power of constitutional review." *Id.* The Court of Appeals performs the second level of review from the decisions of the Board pursuant to KRS 342.290 with the purpose of correcting the Board only where "the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Id.* (quoting *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992)). Further review by this Court is available "as a matter of right under Section 115 of the Kentucky Constitution[,]" and is meant to address "new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude." *Id.* at 200 (quoting *W. Baptist*, 827 S.W.2d at 688). Thus, we "will not simply 'third guess' the decisions of the Board and the Court of Appeals upon the same evidence." *Id.*

In determining disputed issues of fact, "the ALJ as 'the finder of fact . . . has the authority to determine the quality, character and substance of the evidence presented.'" *Id.* at 198 (quoting *Paramount Foods, Inc. v. Burkhardt*,

7

695 S.W.2d 418, 419 (Ky. 1985)). Additionally, "an ALJ has sole discretion to decide whom and what to believe, and may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof." *Id.* (quoting *Bowerman v. Black Equip. Co.*, 297 S.W.3d 858, 866 (Ky. App. 2009)).

In workers' compensation cases, the claimant bears "the burden of proof and the risk of persuading the board in his favor." *Snawder v. Stice*, 576 S.W.2d 276, 279 (Ky. App. 1979). "If the board finds against a claimant who had the burden of proof and the risk of persuasion, the court upon review is confined to determining whether or not the total evidence was so strong as to compel a finding in claimant's favor." *Id.* at 280. "Compelling evidence" is defined as evidence that is so overwhelming no reasonable person could reach the same conclusion as the ALJ. *REO Mech. v. Barnes*, 691 S.W.2d 224, 226 (Ky. App. 1985).

Hardin argues the evidence of record compelled a finding of repetitive motion injuries to his neck and left arm. He further contends the ALJ misapplied *Cepero*. We disagree.

Based on our review of the record, we are convinced the ALJ acted well within her discretion in rejecting Dr. Farrage's opinion relative to the repetitive motion injury. The ALJ placed particular emphasis on the fact that Hardin's testimony concerning a gradual injury was not consistent with the acute injury described and diagnosed by Dr. Farrage. It is not the function of this Court to reweigh the evidence and substitute its judgment for that of the factfinder. The

8

view of the evidence taken by the ALJ was neither patently unreasonable nor flagrantly implausible. Thus, we cannot conclude it was clearly erroneous. *Gosper*, 671 S.W.3d at 199. Further, even overlooking the ALJ's criticism of Dr. Farrage's report, we could not conclude his medical opinion compelled a result in Hardin's favor because the evidence of record on this point was conflicting. Specifically, Dr. Loeb opined that Hardin had not suffered any work-related repetitive motion injury.

Moreover, we agree with the Board and Court of Appeals that the ALJ did not misapply *Cepero*. In *Gosper*, we recently clarified the essential holding of *Cepero* as follows:

> *Cepero* may best be understood to establish that any opinion generated by a physician on the issue of causation cannot constitute substantial evidence where the physician's medical history pertaining to the claimant's injury is irrefutably corrupt due to it being substantially inaccurate or largely incomplete. More generally, however, *Cepero* decrees that no medical opinion can be reasonably probable when predicated upon erroneous or deficient information which is completely unsupported by any other credible evidence.

671 S.W.3d at 206 (internal citations omitted). Our review of the ALJ's Opinion and Order as a whole indicates that *Cepero* was applied in a general sense to support the ALJ's decision not to accept Dr. Farrage's opinion relative to Hardin's claim for a repetitive motion injury. Particularly, the ALJ discounted Dr. Farrage's opinion on this issue because it was inconsistent with Hardin's testimony and balance of the histories recorded in the medical evidence. Ultimately, the ALJ found, "Dr. Farrage's report simply does not support any injury resulting from repetitive job duties." As this finding lies within the ALJ's

9

discretionary authority, we will not second-guess or disturb it. *Id.* at 199-200. Further, we cannot conclude the ALJ misapplied the law or overlooked other controlling statutes or precedents.

While the ALJ's decision, which was affirmed by the Board and the Court of Appeals, may not have been the only possible outcome, it is not clearly unreasonable. The arguments raised by Hardin primarily involve a routine evidentiary determination and are identical to those which were analyzed and rejected by the lower tribunals. Thus, "[t]he present appeal fails to reach beyond the threshold for routine affirmance." *Lab. Corp of America v. Smith*, 701 S.W.3d 228, 235-36 (Ky. 2024) (quoting *W. Baptist*, 827 S.W.2d at 688).

The ALJ determined that Hardin failed to carry the burden of proof. Our review of the record does not convince us that the evidence compelled a different result. Additionally, "the fact remains that the Workers' Compensation Board and the Court of Appeals have provided adequate appellate review, and the view they took of the evidence is neither patently unreasonable nor flagrantly implausible. The case before us does not merit further appellate oversight." *Id.*

## CONCLUSION

For the foregoing reasons, the decision of the Court of Appeals is hereby affirmed.

All sitting. Lambert, C.J.; Bisig, Conley, Goodwine, Keller, and Nickell, JJ., concur. Thompson, J., concurs in result only.

10

COUNSEL FOR APPELLANT:

Ched Jennings
Jennings Law Office


COUNSEL FOR APPELLEE, Ford Motor Company:

Scott E. Burroughs
O'Bryan, Brown & Toner, PLLC


COUNSEL FOR APPELLEE, Workers' Compensation Board:

Michael Wayne Alvey,
Chairman


ADMINISTRATIVE LAW JUDGE:

Hon. Monica J. Rice-Smith