RENDERED:  JANUARY 16, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0970-WC

SCOTT WASTE SERVICE                            APPELLANT

                        PETITION FOR REVIEW OF A DECISION
v.               OF THE WORKERS' COMPENSATION BOARD
                           ACTION NO. WC-22-86941

JOSHUA EATON; HONORABLE
TONYA M. CLEMONS,
ADMINISTRATIVE LAW JUDGE.;
AND WORKERS' COMPENSATION
BOARD OF KENTUCKY                            APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ACREE AND CALDWELL, JUDGES.

ACREE, JUDGE:  The Appellant, Scott Waste Service (Scott), appeals an opinion

of the Workers' Compensation Board (WCB), which affirmed a decision of the

administrative law judge (ALJ).  The ALJ concluded the Appellee, Joshua Eaton,

sustained a work-related injury caused by a fall at work.  Scott contends there was

no substantial evidence to support that a subsequent right hip and thigh infection

was caused by the fall.  As we conclude there was substantial evidence of causation, we affirm.

## BACKGROUND

Eaton does not contest Scott's factual summary.  Eaton began working for Scott driving a garbage truck several years before the January 2022 incident at issue.  Eaton has insulin-dependent diabetes.  In 2013, Eaton was treated for abscesses, one on his left buttock, and—months later—one on his right buttock.  In 2020, Eaton was diagnosed with a diabetic infection of the left foot, also characterized as a diabetic foot ulcer.

One morning in January 2022, Eaton was in his personal truck, waiting for his garbage truck to warm up.  When Eaton got out of his personal truck to go to his garbage truck, he slipped on some ice and fell, landing on his right side.[1]  Although Eaton initially believed he had merely bruised his hip, his condition worsened significantly.  On February 13, 2022, Eaton visited the Medical Center of Franklin complaining of right hip pain, indicating he was "having difficulty with any weightbearing."  (Record (R.) 170).  Eaton was eventually hospitalized.  Drs. Jeffrey Fadel, John Cancian, and Daniel Wolens later examined Eaton and offered their diagnoses and opinions as to causation.

---

[1] Medical records variously describe Eaton's subsequent condition as affecting his right hip, right thigh, and/or right buttock.

In a November 2022 report, Dr. Fadel diagnosed Eaton with an infected hematoma of the right thigh, which he attributed to the fall at work; a diabetic ulcer with osteomyelitis right fifth metatarsal, unrelated to the fall; and peroneal nerve neuritis with resultant foot drop of the right lower extremity, which he attributed to the "infectious process initiated by the infected hematoma sustained at work." (R. 37). Dr. Fadel opined:

> [T]he fall at work caused the bleeding around the hip and thigh region, which then became infected. The infection more likely than not originated from compromised skin that was generated by the fall. The right foot infection had nothing to do with the work injury. The infectious process there was secondary to what happens to most diabetics, which is small vessel disease in the foot region.

(R. 38). Dr. Fadel did not discuss Eaton's 2013 abscesses or his 2020 left foot ulcer.

Dr. Cancian examined Eaton in February 2023. Dr. Cancian diagnosed Eaton with a right thigh septic hematoma, right foot drop secondary to common peroneal nerve neuropathy, and diabetic neuropathy. (R. 4470). Dr. Cancian attributed the right thigh septic hematoma to Eaton's fall at work. Dr. Cancian did not indicate having reviewed any medical records pre-dating Eaton's fall.

In May 2023, Dr. Wolens diagnosed Eaton with an abscess of the right gluteus medius muscle and possible right peroneal neuropathy with

-3-

associated foot drop. (R. 267). Based in part on Eaton's "pre-injury history," including "spontaneous abscesses to the left and right buttock secondary to diabetes" and "spontaneous infections of the right and left foot," Dr. Wolens concluded "there is a high probability that what developed in the right buttock and hip was that of a spontaneous infection secondary to uncontrolled diabetes." (R. 268).

In September 2023, upon reviewing additional medical records pre-dating Eaton's fall, Dr. Cancian furnished an addendum, in which he reached a different conclusion as to causation. Dr. Cancian explained:

> When forming my previous opinions, I was not privy to the claimant's extensive history of spontaneous abscesses, dating back to 2013. Within 1 week that year, the claimant had both right and left perineal abscess [sic] operatively treated. Similarly in September of that year, he had a repeat right abscess overlying the gluteus maximus. In November that year, he again had a right sided abscess irrigation debridement. These were all reported as being unprovoked abscesses. These newly provided records also paint the picture of the claimant as an extremely uncontrolled diabetic . . . Upon further examining the claimant's medical records, he has a significant history of bilateral foot diabetic ulcers.

(R. 4482-83). Rejecting his previous analysis, which he characterized at "tenuous" even when initially offered, Dr. Cancian concluded, "The more likely scenario . . . is that these were spontaneous diabetic abscesses which the claimant retroactively assumed to be due to a minor, unrelated workplace incident." (R. 4483).

Dr. Fadel reviewed additional medical records and issued his own addendum in December 2023. He did not list or specify all of the records he reviewed, but explicitly cited Dr. Cancian's initial report, Dr. Cancian's addendum, and "medical records reviewed that begin on March 7, 2013 at the Sumner Regional Medical Center Emergency Room." (R. 4926). Dr. Fadel nonetheless maintained Eaton's fall caused his condition:

> These findings would suggest that . . . Eaton in fact did have pre-existing disease in a dormant, which was probably localized bacterium already in place prior to his fall at work on January 20, 2022. However, it is my medical opinion that after his fall, he developed a hematoma that acted as a culture medium for the initial quiescent status of the bacterium into a full and ongoing infection . . . . If it were not for the fall and development of the hematoma, the severity of the pre-existing dormant condition may have stayed quiet for a number of years, since it had already stayed quiet for nine years.
>
> The remaining conclusions within the initial report generated by me on November 22, 2022 have not changed, even after reviewing the medical records given to me.

(R. 4926).

In determining causation, the ALJ took note of "pre-injury treatment records documenting Eaton's uncontrolled diabetes along with treatment for spontaneous abscesses in 2013 as well as left foot diabetic ulcers in 2020." (R. 5044). The ALJ rejected the opinions of Drs. Carcian and Wolens as to causation in favor of Dr. Fadel's opinion. (R. 5045). The WCB affirmed the ALJ, rejecting

-5-

Scott's contention Dr. Fadel's opinion was not substantial evidence. (R. 5164). This appeal followed.

## STANDARD OF REVIEW

We review decisions of the WCB pursuant to KRS[2] 342.290, Section 111(2) of the Kentucky Constitution, and SCR[3] 1.030(3). Petitions for review are governed by RAP[4] 49. "The function of further review of the WCB in the Court of Appeals is to correct the [WCB] only where the . . . Court perceives the [WCB] has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687–88 (Ky. 1992).

With respect to factual determinations, "The ALJ has the sole discretion to determine the quality, character, and substance of the evidence and may reject any testimony and believe or disbelieve various parts of the evidence regardless of whether it comes from the same witness or the same party's total proof." *Eddie's Service Center v. Thomas*, 503 S.W.3d 881, 886 (Ky. 2016) (citation omitted). With respect to the ALJ's findings, "the issue on appeal is whether substantial evidence supported the determination . . . . The crux of the

---

[2] Kentucky Revised Statutes.

[3] Rules of the Kentucky Supreme Court.

[4] Kentucky Rules of Appellate Procedure.

inquiry on appeal is whether the finding which was made is so unreasonable under the evidence that it must be viewed as erroneous as a matter of law." *Ira A. Watson Dep't Store v. Hamilton*, 34 S.W.3d 48, 52 (Ky. 2000).

## ANALYSIS

Scott's sole argument on appeal is that Dr. Fadel's report, which the ALJ relied on in determining causation, does not constitute substantial evidence of causation. Scott contends both the ALJ and WCB failed to properly construe and apply *Cepero v. Fabricated Metals Corp.*, 132 S.W.3d 839, 840 (Ky. 2004).

In *Cepero*, an employee alleged he fell and hurt his left knee at work. *Id.* at 840. He subsequently disclosed to two doctors that, several years prior, he had broken his left knee while practicing martial arts, had been confined to a wheelchair for a period of months as a result, and recommended surgery had never been performed. *Id.* The employee underwent surgery to repair his knee. *Id.* In subsequent medical exams, the employee disclosed only his fall at work, and consequently, the examining doctors attributed his injury solely to the fall. *Id.* at 841.

In later testimony, the employee first denied the occurrence of the prior knee injury, but when confronted with his previous disclosures, pivoted to denying the severity. *Id.* Nonetheless, based on the reports attributing the employee's injury solely to the fall, the ALJ was persuaded the employee's injury

-7-

was caused by the fall at work. *Id.* at 842. The WCB reversed, and this Court affirmed the WCB. Undertaking review, the Supreme Court agreed those reports were not substantial evidence "because those opinions relied upon inaccurate or incomplete information furnished by [the employee]." *Id.* at 842.

The Supreme Court has re-visited *Cepero* in several published opinions, and has more recently explained:

> Specifically, *Cepero* may best be understood to establish that any opinion generated by a physician on the issue of causation cannot constitute substantial evidence where the physician's medical history pertaining to the claimant's injury is irrefutably corrupt due to it being substantially inaccurate or largely incomplete. More generally, however, *Cepero* decrees that no medical opinion can be reasonably probable when predicated upon erroneous or deficient information which is completely unsupported by any other credible evidence.

*Lexington Fayette Urban Cnty. Government v. Gosper*, 671 S.W.3d 184, 206 (Ky. 2023) (citations omitted). In *Gosper*, the Supreme Court distinguished *Cepero*, as "[c]ontrary to the situation in *Cepero*, there [was] no indication [the doctor]'s opinion was tainted by a complete failure to consider relevant medical events." *Id.* Not only must a doctor's opinion be based on sufficient information to be considered substantial evidence, but as the Supreme Court also made clear, a doctor's opinion must be internally consistent and reflect an accurate understanding of the information furnished. *Thomas*, 503 S.W.3d at 889 (doctor's

-8-

opinion not substantial evidence due to "internal inconsistencies" and "inaccurate understanding of the facts").

Scott pursues arguments which call on us to consider the extent to which doctors must not only be furnished with sufficient information, but also the extent to which doctors must affirmatively recite and/or discuss that information in their written opinions. Scott argues Dr. Fadel's addendum, which the ALJ found persuasive, cannot constitute substantial evidence, arguing, "The fact that Eaton treated for a left foot condition as late as January 2021 for a spontaneous diabetic ulcer, and that fact is omitted from Dr. Fadel's reports, renders his reports corrupt and substantially incomplete and inaccurate." (Appellant's Br. at 17). Scott directs us to the court's statement in *Cepero* that, "In the absence of proof, we will not assume that any competent medical examiner would be aware of but fail to mention a history of a prior injury *to the exact same part of the body* for which compensation is sought." 132 S.W.3d at 843 (emphasis added).

Obviously, a left foot is not a right hip or thigh. The "exact same part of the body" is not at issue, so this statement in *Cepero* is immediately of limited applicability. But more importantly, we do not read *Cepero* as setting forth any sort of rule requiring a doctor's report to affirmatively recite and/or discuss a party's medical history before the doctor's opinion can be considered substantial evidence. Practically any doctor's report will omit some aspect of a party's

-9-

medical history. Not unlike lawyers, doctors ofttimes have sincere differences of opinion, for example, regarding which aspects of a party's history merit mention as being medically relevant. We do not view a failure to affirmatively mention any particular portion of a party's medical history as inherently corrupting a doctor's opinion. In the passage cited by Scott, the court was not setting forth a mandate, but merely explaining why it would not *infer* knowledge of a party's medical history when a doctor's report is silent and there is an "absence of proof" the doctor was furnished with the party's "true medical history." *Id.* at 843. We are not faced with that scenario.

In his addendum, Dr. Fadel stated he had reviewed Dr. Cancian's addendum, which discussed Eaton's "extensive history of spontaneous abscesses" and "significant history of bilateral foot diabetic ulcers." (R. 4482-83). Although this indicates Dr. Fadel was furnished with Eaton's history of abscesses and foot ulcers through Dr. Cancian's addendum, Scott contends this is insufficient, arguing, "The actual treatment records contain much more detail than Dr. Cancian's reports." (Appellant's Br. at 17). But we also do not read *Cepero* as requiring that a party's medical history be furnished in detailed medical records. At issue in *Cepero* was a party's self-reported medical history, not whether medical records regarding the party's prior knee injury had been reviewed. Medical history, even medical history reflected in medical records, will often be

self-reported by a patient or relayed by a patient's family member without the detail or precision we might expect from a medical professional. Through Dr. Cancian's addendum, Dr. Fadel was sufficiently furnished with Eaton's history of abscesses and foot ulcers.

In addition, Dr. Fadel stated his addendum was also based on "medical records reviewed that begin on March 7, 2013 at the Sumner Regional Medical Center Emergency Room." (R. 4926). While not conclusive, this tends to indicate Dr. Fadel was, in fact, furnished with Eaton's medical records dating back to 2013, which would have included medical records relating to his 2013 abscesses and 2020 left foot ulcer.

Further, in his addendum, Dr. Fadel specifically referenced Eaton's 2013 abscesses. (R. 4926). And in his initial report, Dr. Fadel diagnosed Eaton with a right foot ulcer, which he concluded was unrelated to Eaton's fall at work, explaining, "The right foot infection had nothing to do with the work injury. The infectious process there was secondary to what happens to most diabetics." (R. 38). Dr. Fadel was not only furnished with information but demonstrated awareness of Eaton's issues with abscesses and foot ulcers. There was no "*complete failure* to consider relevant medical events." *Gosper*, 671 S.W.3d at 206 (emphasis added).

-11-

Scott also argues Dr. Fadel's report reflects an inaccurate understanding of Eaton's history. Scott contends:

> There was no nine-year gap in the development of spontaneous diabetic *ulcers* as stated by Dr. Fadel and cited by ALJ Clemons, as Eaton sustained one in 2020 to the left foot . . . . The ALJ found but does not appear to rely upon any medical opinions in the record to find that the 2020 left foot *ulcer* was not spontaneous. Those records state the treatment was not the result of any trauma or injury. If there was no injury or trauma causing the diabetic left foot *ulcer*, then why is it not spontaneous?

(Appellant's Br. at 17 (emphasis added)). Although Scott does not direct us to specific medical records, Dr. Wolens did characterize Eaton's foot *ulcers* as "spontaneous infections of the right and left foot." (R. 268). But the ALJ found Eaton's records "are not, however, indicative of an ongoing problem with spontaneous *abscesses* within nine years prior to the January 2022 work incident." (R. 5044) (emphasis added). Scott's contention is that Eaton's 2020 left foot *ulcer* was sufficiently similar to his 2013 and 2022 issues, which the ALJ characterized as *abscesses*, such that it was inaccurate of Dr. Fadel to state Eaton's pre-existing condition with *abscesses* had "stayed quiet for nine years." (R. 4927).

In *Eddie's Service Center v. Thomas*, *supra*, our Supreme Court concluded a doctor's opinion reflecting internal inconsistencies and based on inaccuracies was not substantial evidence. In that matter, a doctor misunderstood the level of physical exertion in which a party was engaged. *Thomas*, 503 S.W.3d

-12-

at 887.  But Scott's insistence Eaton's 2020 left foot *ulcer* is "no different than the *abscess* that developed in 2022," (Appellant's Br. at 17 (emphasis added)), is a medical opinion, not a question of fact as to whether a party either leisurely walked or strenuously climbed up a hill, as in *Thomas*.  Upon what basis can we conclude this medical opinion is correct, and that any other characterization, such as Dr. Eaton's, is not merely a difference of medical opinion, but actually constitutes a factual inaccuracy?  Scott does not furnish one.

Whether one medical opinion or another is more persuasive is a determination we leave to the sound discretion of the ALJ.  So long as a doctor is furnished with sufficient information, the ALJ is entitled to determine whether a given doctor persuasively grapples with that information, which will likely include consideration of whether the doctor effectively discusses and analyzes particular information.  In this matter, Dr. Fadel was furnished with sufficient information.  The ALJ found Dr. Fadel's opinion persuasive, and Scott fails to persuade us the ALJ's finding was "so unreasonable under the evidence that it must be viewed as erroneous as a matter of law." *Hamilton*, 34 S.W.3d at 52.

Considering the frequency with which *Cepero* is cited to challenge medical opinions as in this case, we read the case as hinging upon the worker's failure to adequately disclose his own medical history—evidence not only medically relevant, but necessary to the expert opinion regarding his injury, the

medical relevance of which was obvious even to a layperson. Our workers' compensation tribunals in both the Executive and Judicial Branches are as capable as laypersons of surmising that a past left knee injury is medically relevant to a present left knee issue. But they would be ill-advised to jump to a conclusion, independently of expert opinion, that finds a past foot ulcer relevant to a present thigh infection.

Our courts should therefore be wary of striking medical opinions pursuant to *Cepero*, unless omitted or inaccurate medical history is obviously relevant to a party's condition, even to a layperson. *Cepero* should not be understood as invalidating medical opinions upon any and every instance of omission or inaccuracy. Disposition of these matters often comes down to a duel of experts, with attendant accusations of omission and inaccuracy, which may turn out to be substantial, or which may turn out to be carps and quibbles. Unless the relevance of medical-history omissions or inaccuracies are obvious even to a layperson, the expert duel must play out, as it did here, because medical professionals are in the better position to impeach contrasting medical opinions as they did here.

## CONCLUSION

Based on the foregoing, we affirm the July 12, 2024 opinion of the WCB.

ALL CONCUR.


BRIEF FOR APPELLANT:

Rodney J. Mayer
John H. McCracken
Louisville, Kentucky

BRIEF FOR APPELLEE JOSHUA EATON:

Scott C. Justice
Louisville, Kentucky